Littleton, Judge,
delivered the opinion:
Plaintiff seeks to recover. $69,942.70. The defendant interposes a counterclaim of $208,265.92.
Plaintiff was an incorporation’ of the' Paris agency of the Canadian Company. It succeeded to and took over all of the assets, and assumed all the functions and liabilities of this agency of the Canadian Company. Other than the incorporation there was no change effected in the status, the functions, the operations, the relations, or the owner-shiji of the Paris agency.
Plaintiff takes certain exceptions to the findings herein made. Upon a consideration thereof in the light of the ■entire record in the case, we find that the additional and substitute findings set forth in the plaintiff’s exceptions are either not supported by the evidence or are in conflict therewith.
Finding V deals with the routine system of accounting through the New York Corporation and shows that at no-time was the New York Corporation indebted to the plaintiff or its predecessor, but that both were at all times indebted to the New York Corporation. Plaintiff suggests the additional recital, which we deem unnecessary, that the accounts relating to Shipping Board vessels were sent to the New York Corporation at the direction of the Shipping Board officials in Europe. It also suggests striking out the last statement relative to the indebtedness, citing defendant’s Exhibit 5, page 14, being a statement prepared by the defendant’s auditors showing a net balance due the plaintiff of 475,552.39 francs. The facts in this connection are that the cited statement constitutes a contradiction of the contention. It was only a summary of a statement taken by defendant’s auditors from plaintiff’s records of its accounts and inserted as a part of defendant’s exhibit 5 in connection with and in explanation of the analysis of the final audit. The finding made is proper.
. Finding VI relates to the terms of the agreement under which the Shipping Board vessels were operated and the charges against the defendant’s account that should be made, the requirement of accounts, and the advancement *15 ■; of fun cls permitted. Plaintiff requests a finding tbat at no time, was there any direct . transaction in regard to the foregoing. between the plaintiff, and the Shipping Board or the Fleet Corporation. It seeks to strike out the statement in the finding concerning the' obligations in regard to. operation and accounting, and to substitute a recital of a part,of the operator’s contract, including paragraph 12 (a) and (b) concerning the payment of brokerage com- . missions “ in accordance with the usages of the trade,” . and the payment of “ customary fees and commissions for all ports in the vessel’s itinerary where these charges are necessarily and properly incurred.” B'ut the suggested substitute excludes article 11 of the contract concerning compensation to be paid the operators “ as full compensation for the agent’s service,” and paragraph (1), containing the provision that the-compensation of the agent of an operator is provided for in paragraph 12, the latter providing that the “services rendered by branch houses of the ” operators “ in foreign and dependency ports ” could be paid for, but only in accordance with the provision of the schedule of charges therein identified. As a substitute ■ for the finding concerning the absence of dealings between the plaintiff and the Shipping Board or the Fleet Corporation, plaintiff suggests an unsupported recital of its status as agent of the Shipping Board and the rendition of services by it to the Shipping Board for which the charges were made as an agent for the Shipping Board. We have not sufficient evidence to support either exception.
Finding YII relates to the rendition of accounts by the plaintiff to the New York Corporation and the practice of the latter in auditing, entering, and submitting these accounts to the Shipping Board and to the other operators. Plaintiff asks that the latter finding be excluded and that a finding be substituted to the effect that its accounts were made to the' Shipping Board and were merely forwarded through the New York Corporation. The finding made is correct.
The second feature of Finding VII consists of various totals of funds involved to which plaintiff offers an additional statement asking an additional finding that of. the item *16 of 9,178,656.79 francs disbursed by plaintiff only 8,176,877.59 francs have been paid to it, leaving a balance due it of 1,002,279.20 francs, which, at the proper rate of exchange, amounted to $69,918.30. This exception is based upon part of a statement appearing as a note on defendant’s exhibit 10. The exception fails to take into consideration the remainder of the statement showing that the plaintiff has received credit of $19,125.25 more than the total charges set out in plaintiff’s statement of claim and its indebtedness to the defendant in the amount of 123,883.18 francs, without taking into consideration the audit corrections appearing in the exceptions and reservations set out in defendant’s exhibits 5 and 5-A, and without reference to the various charges appearing in plaintiff’s statement of the claim which were erroneous and should be properly credited to defendant.
Finding VIII relates to the total funds advanced by the •New York corporation to the plaintiff’s predecessor and the monies collected and deductions made. This exception is at variance with the proof.
Finding IX' relates to the opening of books by plaintiff and the transfer of accounts from the books of the agency to those of the plaintiff and the totals of the accounts. The record sustains the finding made and does not support the exception taken. . "
Finding X deals-with the vessels of the Mail Company ^ one of the operators, and with the funds held by plaintiff belonging to the bankrupt company and the fact that plaintiff was indebted to it in an-amount stated which was assigned to the defendant. Plaintiff excepts to this finding and asks that the amount of $74,872.03 assigned to the defendant be reduced to $98.51. This exception is not supported by the record. An analysis of the audit shows that following the first, indication of bankruptcy of the Mail Company, the plaintiff’s books showed an increase of chargés against the mail company of approximately three-times the monthly average of the period immediately preceding.
Finding XI consists of a summary of instances in which the plaintiff overcharged defendant’s account for unauthorized services, mischarged the exchange value of foreign *17 monies, and failed to give proper credit in certain corrected transactions. This finding and Finding XII are in accordance with and are fully supported by proof.
The plaintiff is a French corporation, and during the period January, 1920, to February, 1922, acted as the European agent in receiving, discharging, supplying, and dispatching in various European ports certain of the ships of the United States Shipping Board operators, i. e., the France & Canada Steamship Company of New York, a separate corporation, and other corporations operating under the terms of the managing operating agreements of the Shipping Board.
Plaintiff was organized in December, 1919, and succeeded to the former business of the Paris office of the France & Canada Steamship Co., Ltd., a Canadian corporation. The latter became the owner of 4,934 shares of a total of 5,000 shares of the plaintiff corporation, 4,000 shares having been received by the France & Canada Steamship Company in exchange for the assets, property, and business rights of the Paris office of the Canadian corporation; nine hundred and thirty-four shares were subscribed for.
The managing operators’ agreements provided in substance that the operating companies identified as “ agents ” should operate the vessels for the Shipping Board; should man, equip, supply, and pay necessary and proper expenses from the freight collected or from the funds advanced by the Fleet Corporation, and should account to the Shipping Board for the receipts and disbursements; that they should keep separate and approved books of account and that the accounts, vouchers, and other documents should be at all times open to the inspection of the Shipping Board; that under certain circumstances an advance of funds by the board could be made which, it was specifically provided, should be deposited in a special fund and accounted for as the Shipping Board should direct. It was further provided that the operators should be paid designated and fixed fees and special commissions, and that they should appoint their own agents.
*18 Board and, as such, entitled to charge for certain items of services which have not been recognized or approved by the board but have been disallowed in settlement of accounts submitted by its operators. The plaintiff has withheld certain monies received from its predecessor and belonging to the Shipping Board for certain freight collected; has credited a portion of the charges made by it against the fund, and now asks to recover in this case the balance of the total claimed to be due.
The defendant denies that plaintiff was its agent and denies that the plaintiff had the right to make the charges in question for services as agent of the Shipping Board and to hold the money in question. The defendant in its counterclaim seeks to recover the amount withheld by plaintiff, as Well as a certain sum constituting the balance of the funds held by the plaintiff but belonging to the U. S. Mail Steamship Co., Inc., a bankrupt operator, and assigned by the trustees in bankruptcy of that corporation to the Shipping Board in settlement of the account of the Mail Company as an operator of the Shipping Board.
We are of opinion that the claim of the defendant is in accordance with the provisions of the contracts, as well as by the practice of the parties in their dealings with the .Shipping Board. In all instances of accounting between the Paris agency of the Canadian Corporation and the plaintiff, the statements of accounts, with the supporting vouchers and other documents, were transmitted to and cleared through the France & Canada Steamship Company, of New York, and all other statements of account and amounts payable by the Shipping Board were communicated directly by the Shipping Board to the respective operating managers. In rendering its periodical accounts plaintiff transmitted to the New York Corporation its statements of account for each operating company covering their particular vessel, concerning all receipts, expenditures, and freights collected in France or accounts recoverable in New York supported by the original invoices, receipts, and vouchers. The New *19 same, entries of receipts and disbursements, and debited or credited to plaintiff for the collection or disbursements and charges made and, from such entries, the New York Corporation prepared and forwarded a statement of the same to the various operating companies, which, in turn, rendered their statements of accounts to the Shipping Board, the New York Corporation doing the same with respect to the vessels operated by it. When the funds of the Paris agency, or of the plaintiff, were exhausted the New York Corporation at times supplied the necessary advances. But at no time were there any dealings or transactions directly between the plaintiff and its predecessor and the Shipping Board or the Fleet Corporation, and no fees were paid to the plaintiff as the agent of the Shipping Board or the Fleet Corporation; nor were monies advanced to it or accounts rendered from it. Prior to the taking over of the Paris office of the France & Canada Steamship Co., Ltd., a Canadian corporation, by the plaintiff the Shipping Board had advanced through the New York Corporation a certain sum of money for the account of certain operating managers. Plaintiff acquired the balance on hand in January, 1920, and from this sum, plus such freight as had been collected, have been withheld the items claimed to be due it as an agent of the Shipping-Board. Added to these amounts are similar charges for which the plaintiff has not been able to reimburse itself.
The issue concerns the plaintiff’s contention of contractual relationship and its right to make the charges in question. The matters in controversy, forming the subject matter of the claim, are nonmaritime. The Humboldt, 86 Fed. 351. Cory Bros. & Co. v. United States, 51 Fed. (2d) 1010. No jurisdictional question was raised.
We are of opinion that the plaintiff was the agent of the operating companies in the performance of services rendered and was not the agent of the United States. It is therefore restricted in its claim against the defendant to the charges authorized by the contracts between the board and the managing operators. The operating contracts, under the terms *20 of .gated the operating managers to man and operate them for the benefit of the Shipping Board; that is, to hire and pay the crew, navigate the vessels, procure, receive, and transport the freight, collect freight charges, defray all necessary and usual expenses for entering and clearing the vessels, to-appoint and pay its agency employees, and account to the Shipping Board in connection therewith. As compensation, the operating managers were to receive certain commissions and fixed fees. The only expenses and payments permitted to be charged to the account of the Shipping Board were the wages of seamen, the costs of equipment, victuals, and supplies, and “ other costs and expenses incident to the management, operation, and conduct of the business of such vessels,” including brokerage for freight, passengers, and charters “ when it is necessary and properly incurred to secure cargoes, passengers, or charters, in accordance with the usages-of the trade,” and “ the customary fees and commissions for all ports in the vessel’s itinerary where these charges are .necessarily and properly incurred,” and the charges of its-subagents in foreign and dependency ports “ for customary-fees and commissions as specified ” in a designated schedule..
- In rendering the accounts to the New York. Corporation and the other operating managers, as above stated, the plain,tiff incorporated certain unwarranted items of charges for-services of its employees, made erroneous charges on exchange of currency, and failed to give other detailed credits to the defendant, resulting in a debit in the defendant’s account which inured to the benefit of the plaintiff. These charges were in excess of the commissions on disbursements-payable to the operating managers under the terms of their agreements. These items are enumerated in Finding XI. In order to justify these items, which could not be sustained as an agent or employee of the operating managers, plaintiff contends that it was an agent of the Shipping Board. Included in the erroneous charges above referred to, plaintiff failed properly to account for a sum in excess of 1,965,-900.67 francs, being the net monies advanced by the Ship *21 ping Board to the New York Corporation for the account of certain operators and received by the plaintiff’s predecessor, plus revenues collected by plaintiff less the net debits in that connection and also in connection with the transactions of the United States Mail Steamship Co., Inc., accounts under the operating agreements in the amount of 1,019,-.591.24 francs.
Plaintiff denies accountability on the ground that such items constituted an account with the Canadian Corporation on the one hand and the United States Mail Steamship Co., Inc., on the other, and are not, therefore, an indebtedness to the defendant for which the plaintiff is accountable; that the first item pertains to an advance received by plaintiff in the first instance from the Paris agency of the Canadian Corporation and turned over to it by the officials of the agency with instructions to credit it to the account of the Canadian Corporation and that the second item was in like manner monies advanced to the plaintiffs by the U. S. Mail Co., Inc.
We are of opinion that the defendant’s counterclaim for $208,265.92 is justified and supported by the facts and by the manifest intent of the provisions of the operating agreements as to the charges properly to be debited to the defendant’s account and that the correct audit of plaintiff’s books shows that it is definitely indebted on account of board vessels and in its general account to the New York Corporation ; that it is indebted to the defendant on account of board-vessel transactions, exclusive of the United States Mail Steamship Co., Inc., account, in the amount of 1,965,900.61 francs and that it is further indebted to the defendant by reason of transactions on account of the Mail Company in respect to vessels operated under MO-4 (trust-fund agreements) in the amount of 1,019,591.24 francs, or a total of 2,985,495.91 francs, which, converted into U. S. dollar equivalent at the average rate of exchange of 14.335/1, amounts to $208,265.92.
*22 The account between the plaintiff stated in accordance with the findings, is as follows:

The plaintiff’s status was that of agent for the operators and not of the Shipping Board and it was therefore only-entitled to make those charges for services of a subagent as provided in the contract with the operator, particularly in paragraph 12 of the contract.
*23 The agreements under which the Shipping Board ships were operated and under which the disbursements and expenditures were to be made and the commissions paid to the operator, its subagents and brokers, and accounted for, were contracts between the defendant and the operating-companies designated as “ the agent.” The operator, as agent of the Fleet Corporation, was to manage and conduct the business of the vessels assigned to him “ in accord with the directions, orders, and regulations ” of the Fleet Corporation to “ man, equip, victual, and supply such vessels, and to pay for account of the Fleet Corporation ” the costs of operation and management “ except as is otherwise provided herein.” Provision was also made concerning maintenance and repair; the exercise of care to avoid damage and loss, and concerning the execution of the charter parties, freight contracts, and the issuance of bills of lading with the usual exemptions and stipulations. The operator, as the agent, was “ to collect all freight and other money ” due and “ rising out of the management, operation, and business of the vessel,” or otherwise notify the Fleet Corporation for further action. All such monies as were collected were required to be deposited by the operator in a designated manner, “ which money shall, in so far as the agent [the operator] is concerned, be the property of the Fleet Corporation.” From such funds the operator was authorized to pay all disbursements authorized to be paid by the operator for the account of the Fleet Corporation. The operator was thereafter required to “ render a full account of all monies received ” at times and in the manner required by the Fleet Corporation. Provision was made for the advancement of funds by the Fleet Corporation to the operator in the event the funds held by the latter “ should be insufficient to meet the disbursements necessary on the vessels.” In accounting the operator was required to observe prescribed methods and forms in books devoted exclusively to the management of the Shipping Board ships, which were at all times to be subject to examination and audit by the Fleet Corporation.
For all of the foregoing services by the operator it was to receive “ as compensation for its services ” under the contract a varying but designated percentage on the gross out *24 ward freight, upon gross ported between American ports, and on passenger revenues, on salvage earned, and a fixed fee for voyages in ballast or while the vessels were undergoing repairs, but payable “ only on revenues actually collected,” except with reference to transportation of Government cargoes on which no freight was collected. “ Branch houses of the agent,” the operator, were to receive compensation for services as provided by paragraph 12 of the contract which was to the effect that brokerage commissions could properly be paid in European ports by the operator for freight, passengers, and charters and be charged as “expense incident to the management and conduct of the business ” of the vessel, in such cases “ where it was necessarily and properly incurred to secure cargoes, passengers, or charters.” Payment was also permitted of “ the customary fees and commissions for all ports in the vessel’s itinerary where these charges are necessarily and properly incurred” and for agency service rendered by branch houses of the agent in foreign and dependency ports; the operator was permitted to pay and charge to defendant’s account “the customary fees and commissions at those ports as specified in the schedule of fees and commissions for foreign and dependency ports, adopted by the Fleet Corporation March 1,1920, as the same may be revised from time to time.”
In view of the foregoing, there were but two parties to the operating agreement. The operator was the agent of the Fleet Corporation and the accountable party for all collections received and disbursements made in accordance with the contract. It was restricted to certain categories of expenses and commissions, among which were the customary fees and commissions rendered by a branch house of the operator in foreign and dependency ports, but as specified in the schedule of designated fees.
There was no provision in the contract for services and the payment of any other than the operator, his subagent in foreign and dependency ports, and independent brokers for freight, passenger, and charter parties. There was no provision made for the services of an agent of the Fleet *25 Corporation or the Shipping Board other than the operator who could be paid for services from Shipping Board advances and freight charges collected, and the sums so paid charged to the Fleet Corporation’s account. The plaintiff was not an operator nor an independent broker and was therefore under the contract a subagent of the operators in question on whose behalf the operators were permitted to pay for services and to charge the same to the defendant’s account but only “ as specified in the schedule of fees and commissions ” adopted by the Fleet Corporation March 1, 1920, “ as the same may be revised from time to time.” There was no other or separate contract between the Shipping Board or the Fleet Corporation and the plaintiff. Its right to commissions for services rendered Shipping Board ships was secured to it under the terms of the operator’s agreements, but in the status of a subagent. So far as the United States was concerned, plaintiff’s rights were only those provided in the contract with the operator. Plaintiff, however, has charged the defendant’s account for sums other than as subagent of the operators and contends that it was an agency of the Shipping Board. At the same time it denies accountability to the Shipping Board with respect to the funds received from its predecessor and the funds held in the account of the Mail Company, on the ground that as an agent of these corporations it is accountable for such funds to the operators and not to the Shipping Board. Plaintiffs contention is in conflict with the provisions of the contract under the terms of which the funds in question came into its possession and which, according to the correct audit of the accounts, amounts to $208,265.92, in excess of all proper charges by the plaintiff as a sub-agent of the operators. As such subagent of the operators plaintiff was entitled to have charged in the accounts rendered to the Fleet Corporation only those items on its behalf which were permitted by the schedule mentioned in the contract. It has had in its possession monies advanced by the Shipping Board or the Fleet Corporation to an agent or operator and has collected freight monies belonging to the Fleet Corporation for which it has not properly ac *26 counted. The facts show no sum on account of the foregoing, but that it is indebted to the defendant for the reason stated in the amount of 2,985,491.91 francs, or $208,265.92 for which judgment is rendered in favor of the defendant on its counterclaim, with interest at 6 per cent per annum from August 18, 1930, until paid. It is so ordered.
AVhalet, Judge,; AVilliams, Judge; GreeN, Judge; and Booth, Chief Justice, concur.